

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-15-2006

# Sulaiman v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2843

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sulaiman v. Atty Gen USA" (2006). *2006 Decisions.* Paper 453.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/453

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 05-2843

————

PAULUS FUADI SULAIMAN,
                                             Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                             Respondent

————

Petition for Review of the Order
of the Board of Immigration Appeals
(A79-733-648)
Immigration Judge: Hon. R. K. Malloy

————

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2006

Before: SLOVITER, WEIS, and GARTH, Circuit Judges

(Filed September 15, 2006)


OPINION
_____

SLOVITER, Circuit Judge.

Paulus Fuadi Sulaiman petitions for review from a final order of the Board of Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of Sulaiman's application for asylum, withholding of removal, and protection under the United Nation's Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252(a)(1). For the reasons below, we will deny the petition.

**I.**

The parties are familiar with the facts and proceedings before the BIA and the IJ, so we will only briefly revisit them here. Sulaiman is a citizen and native of Indonesia. He claims that he came to the United States because he had been persecuted and fears future persecution on account of his Chinese ethnicity.

At the hearing before the IJ, Sulaiman testified that he was attacked twice between November 2001 and January 2002. He claimed that he and his wife (then fiancée) were first attacked on the street by associates and family members of his brother-in-law who warned him to stay away from his fiancée. He stated that one of the attackers told him, "[Y]ou're Chinese, so you get out of here." Administrative Record ("A.R.") at 79. The attack was stopped by an army soldier before any serious injury occurred. Although Sulaiman reported the incident to the police, no arrests were made. Sulaiman subsequently reported to the United States Embassy in Jakarta that his brother-in-law was helping to smuggle people into the United States. Approximately two months later,

2

twenty people, including some relatives of his brother-in-law, tried to enter Sulaiman's home to destroy it and to attack him. This time, some security guards ended the attack, but not before the group injured Sulaiman and his wife's daughter, and damaged the house. Again, no arrests were made. Sulaiman believes his brother-in-law would kill him if he found Sulaiman in Indonesia, and that the police would not protect him.

The IJ denied Sulaiman's petition, finding that he failed to establish either past persecution or a well-founded fear of future persecution on account of his Chinese ethnicity. The IJ noted that each of the attacks was stopped by "native Indonesian officials," which showed that the persecution was not by government officials or by people whom the government was unwilling or unable to control. A.R. at 49. The IJ found that the attacks were based on personal dislike of Sulaiman because his brother-in-law's family "disapproved of the association of [Sulaiman] and his future wife on account of the differences in ethnicity." A.R. at 50. The IJ characterized the two attacks as "criminal actions," based on a "personal vendetta" against Sulaiman. A.R. at 53, 54. Finally, the IJ found that Sulaiman could safely return to the island of Sumatra, Indonesia, which is two or three hours by plane from Jakarta, and where his parents and two siblings currently live, and "live safely out of reaches of the brother-in-law." A.R. at 52.

**II.**

Where, as here, the BIA adopts the opinion of the IJ, we review the decision of the IJ. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). Whether a petitioner has

3

demonstrated past persecution or a well-founded fear of future persecution is a factual determination subject to the deferential substantial evidence standard. Id. at 272. Under the substantial evidence standard, this court must uphold the IJ's findings unless the evidence "not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

## III.

Our review of the record leads us to conclude that substantial evidence supports the IJ's findings that Sulaiman failed to show past or a reasonable possibility of future persecution. Sulaiman failed to show that the government was unwilling or unable to prevent the violence. Gao, 299 F.3d at 272 ("[T]o establish eligibility for asylum on the basis of past persecution, an applicant must show [incidents on account of one of the statutorily-protected grounds] committed by the government or forces the government is either 'unable or unwilling' to control.") (quoting Navas v. INS, 217 F.3d 646, 655 (9th Cir. 2000)). The IJ concluded that the violence against Sulaiman was perpetrated by fellow citizens and was not the result of governmental action or acquiescence. The evidence presented does not compel a contrary conclusion.

Similarly, Sulaiman did not show that the Government of Indonesia would fail to prevent future harm from his brother-in-law. Moreover, there is substantial evidence to support the IJ's finding that Sulaiman's brother-in-law would not be able to find him if he relocated to another part of Indonesia. 8 C.F.R. § 1208.13(b)(2)(ii) ("An applicant does

4

not have a well-founded fear of persecution if [he] could avoid persecution by relocating to another part of [his] country of nationality . . . if under all the circumstances it would be reasonable to expect [him] to do so.")

We also conclude that Sulaiman has failed to show that there is a pattern or practice of persecution of ethnic Chinese of Indonesia. "[T]o constitute a 'pattern or practice,' the persecution of the group must be 'systemic, pervasive, or organized.'" Lie, 396 F.3d at 537 (quoting Ngure v. Ashcroft, 367 F.3d 975, 991 (8th Cir. 2004)). In Lie, where we addressed the treatment of Chinese Christians in Indonesia, we found that the situation was improving and that the cited violence did "not appear to be sufficiently widespread as to constitute a pattern or practice." Id. at 537. Sulaiman has not provided additional evidence of persecution of ethnic Chinese. Indeed, his family is still living in Indonesia in relative safety. See id.

We conclude that the IJ's denial of asylum was supported by substantial evidence. Because the standard for eligibility for withholding of removal is more stringent than the standard for asylum, the IJ also properly denied Sulaiman's application for withholding of removal. Sulaiman does not argue that the IJ was incorrect in finding that he failed to qualify for protection under the CAT, so we need not review that decision here.

**IV.**

For the foregoing reasons, the petition for review will be denied.

5